## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **IN RE: CASES FILED UNDER THE AMERICANS WITH DISABILITIES ACT BY NORBERTO MEDINA-RODRIGUEZ** | Civil No. 15-3184 (PAD/BJM)<br>Civil No. 15-3190 (PAD/BJM)<br>Civil No. 16-1833 (PAD/BJM)<br>Civil No. 16-1912 (FAB/BJM)<br>Civil No. 16-2586 (PAD/BJM)<br>Civil No. 16-2587 (PAD/BJM)<br>Civil No. 16-2590 (PAD/BJM)<br>Civil No. 17-1947 (PAD/BJM) |

### REPORT AND RECOMMENDATION

Norberto Medina-Rodriguez ("Medina") brought these cases against a number of different places of public accommodation, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. In July 2017, Judges Pedro A. Delgado-Hernández and Francisco A. Besosa referred these cases to me for a hearing and report and recommendation to determine whether the cases are frivolous or malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). These referred cases are closed, having been dismissed with prejudice. I held a hearing on April 17, 2018 where I heard the testimony of Medina, a client of Attorney Jose Carlos Velez-Colon ("Velez") who has represented other plaintiffs against different defendants under the ADA in this district. Case No. 17-1943, Dkt. 38. Transcripts were prepared. Case No. 17-1943, Dkt. 83. For the reasons below, the court should find that these cases were not brought in violation of 28 U.S.C. § 1915(e)(2)(B)(i).

### BACKGROUND

Medina is sixty years old and lives in Carolina, Puerto Rico. Medina suffers from a mobility disability, which limits his capacity to walk and stand.  Still, Medina travels often and feels as if he encounters problems as a result of his disability every day. He files ADA complaints because he sees how people treat the disabled poorly; for example, he has heard people say, "I don't care if they dislike coming here or not. I don't care if they come here or not. I have plenty of other customers." Dkt. 83 at 10.

In re: Cases Filed under the Americans with Disabilities Act by Norberto Medina-Rodriguez                    2

Now, when Medina finds a deficiency or inaccessibility, he informs his lawyer. Medina first met his lawyer, Velez, through a co-worker when he needed an attorney for a credit case stemming from his divorce. When he learned that Velez also handled ADA cases, Medina decided he wanted to file ADA complaints, including those that led to the cases currently at issue.

Medina estimates that, through Velez, he has filed thirty to forty cases under the ADA against bakeries, restaurants, and other locations. Medina personally visits every place that he has sued, and he has visited many other places that have disability-access issues that he has not sued. He takes photographs as evidence of ADA-noncompliance. Although Medina does not review the complaint filed, he does speak about it with Velez. Velez explains what the lawsuit says and what Medina demands. In response to being asked if he requested monetary payment from the defendants, Medina answered that what he wants is for the defendants "simply to deal with that situation and repair that." Dkt. 83 at 12. Medina's purpose in filing lawsuits is to have the facilities improved. He wants the defendants to make physical changes to their facilities to make them more accessible for people with disabilities, to "make life more comfortable and easier." Dkt. 83 at 12.

Medina has seen the businesses he sued make these changes to improve accessibility after his lawsuits, including increasing the number and width of parking spaces. Medina does not have any agreements with third parties and does not receive monetary compensation for these lawsuits. Velez has only one third-party agreement, with expert Pedro Alfaro. Medina is aware of the expert, who helps with cases and whose hourly rate Velez pays. Medina does not pay Velez, who seeks litigation expenses, costs, and attorney's fees from defendants. Those litigation expenses can include reimbursement for the expert fees.

The settlements in these cases reflect Medina's testimony regarding his stated goals and expectations for these lawsuits.[1] They require defendants to make modifications and remove obstacles to for people with mobility disabilities who do or would like to patronize their establishments. Some agreements even require defendants to post signs with the universal

---

[1] I have inspected the settlement agreements *in camera*.

"handicap" symbol advertising help upon request for disabled people. Many of the agreements provide for defendants to pay costs and attorneys' fees, but none provides damages or compensation for Medina.

## DISCUSSION

The ADA's purpose is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). As a remedial statute, the First Circuit follows traditional canons of statutory interpretations and construes it broadly. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003) (citing *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)). The ADA provides for a private right of action and injunctive relief as remedies for people who are subjected to discrimination on the basis of their disability. 42 U.S.C. § 12188(a). The combination of broad interpretation, plaintiff-friendly provisions, and potential for an attorneys' fee award has made ADA lawsuits ripe for abuse. *See* Helia Garrido Hull, *Vexatious Litigants and the ADA: Strategies to Fairly Address the Need to Improve Access for Individuals with Disabilities*, 26 Cornell J. L. & Pub. Pol'y 71, 72 (Fall 2016).

The ADA cases before the court for determination of whether the cases are frivolous or malicious share similar facts, a plaintiff, and plaintiff's attorney. All but two of these cases[2] were referred to me for a report and recommendation after their closure. Since, those two cases have also been dismissed with prejudice in light of settlements reached by the parties. Jurisdiction over the dismissed cases must be determined before it is possible to reopen them for evaluation under § 1915(e).

**Jurisdiction over Dismissed Cases**

Orders dismissing these cases were issued pursuant to Federal Rule of Civil Procedure 41. A plaintiff "may dismiss an action without a court order by filing: a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. Pro. 41(a)(1)(A)(i)–(ii).

---

[2] Case Nos. 15-3190 (PAD/BJM) and 17-1947 (PAD/BJM).

In the absence of clear federal question or diversity jurisdiction over a matter, federal courts may assert ancillary, or supplemental, jurisdiction. Ancillary jurisdiction has been used for two main purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (internal citations omitted). In *Kokkonen*, the Supreme Court declined to extend federal jurisdiction to a case which the district court had dismissed with prejudice after the parties settled. *Id.* at 376. The Court found that a subsequent breach of that settlement agreement was outside even the federal court's ancillary jurisdiction because it had been dismissed with prejudice. *Id.* at 380. Although the question before me concerns the origins of the cases rather than a settlement breach, the reasoning remains the same. Despite the federal courts' inherent powers, a dismissal pursuant to Rule 41 is absolute unless the court has incorporated certain provisions in its order that might allow it to retain jurisdiction. *See id.* at 381–82. The court retained jurisdiction in Case No. 16-2578 solely "to enforce the terms of the agreement" that the parties reached. Case No. 16-2578, Dkt. 35. Lacking this assertion, the finality of a dismissal with prejudice in every other case leaves the court with "nothing to do but execute the judgment." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000); *accord Quincy V, LLC v. Herman,* 652 F.3d 116, 120–21 (1st Cir. 2011) (federal courts may enforce contract settlements only if embedded in a judgment or over which they maintained jurisdiction; otherwise, an independent basis for federal jurisdiction is required) (citing *Lipman v. Dye,* 294 F.3d 17, 21 (1st Cir. 2002)). In *Green Tree*, the Supreme Court noted that "the order plainly disposed of the entire case on the merits and left no part of it pending before the court." *Id.* at 86. For that reason, the decision was final. *Id.* Similarly, in the majority of cases referred to me, judgments provide only for dismissal—the court did not expressly retain jurisdiction over any aspect.

The Court in *Green Tree* went on to distinguish dismissals with prejudice from administrative closings, which are more akin to staying a case and permit the possibility of reopening. *See Freeman v. Pittsburgh Glass Works, LLC,* 709 F.3d 240, 246–47 (3d Cir. 2013).

The First Circuit described an administrative closing as having "no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository." *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999). Both the parties and the court retain the power to reinstate an administratively closed case. *See id.* An administrative closing, therefore, provides the "independent basis for federal jurisdiction" necessary to resurrect a case; a dismissal with prejudice does not. *Kokkonen*, 511 U.S. at 381. This comparison underscores the finality of a dismissal with prejudice.

Rule 40, however, is not the end-all, be-all when it comes to final judgments. Federal Rule of Civil Procedure 60 offers methods by which parties may be granted relief from final judgments, orders, and proceedings. The court, on motion and just terms, may relieve a party from a final judgment in certain circumstances. Fed. R. Civ. Pro. 60(b). Of these circumstances, fraud, misrepresentation, or misconduct, and Rule 60(b)(6)'s catch-all provision, most readily lend themselves to the instant case, but circuits are split on whether district judges may grant such relief *sua sponte*. *Van Cannon v. United States*, 890 F.3d 656, 661 (7th Cir. 2018) (The Sixth and Tenth Circuits require a party motion to vacate a judgment; the Second, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits permit the district court to act on its own motion). Moreover, the majority of circuit court decisions considering *sua sponte* authority premise their holding on whether parties receive notice of the district court's intent prior to the new order. *Pierson v. Dormire*, 484 F.3d 486, 492 (8th Cir. 2007), *rev'd in part on other grounds*, *Pierson v. Dormire*, 276 Fed. Appx. 541 (8th Cir. 2008) (per curiam). The distinction between the instant cases and precedent cases is not whether parties have notice. Medina has notice of the potential proceedings and even testified at a hearing with Velez present. Case No. 17-1943, Dkt. 38. The crux of the matter here is whether a court may, *sua sponte*, reopen closed cases in order to examine whether closed cases might form a pattern of frivolous or malicious prosecution, constituting "misconduct" or otherwise justifying relief under Rule 60(b).

The First Circuit has declined to decide whether Rule 60(b) permits *sua sponte* relief. *Quincy V*, 652 F.3d at 121; *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 (1st Cir.

2006). The closest decision the First Circuit has made underscores the importance of the final judgment language. In *Quincy V*, "the district court reasonably construed the motion to enforce as an implicit Rule 60(b) motion to reopen," so the First Circuit found that the court had retained jurisdiction over the settlement. *Quincy V*, 652 F.3d at 121. As stated, the court did not explicitly retain jurisdiction in any of the closed cases before the court. Nor, does it appear, could any of the dismissal orders be "reasonably construed" as retaining jurisdiction over the initial filings. Accordingly, the court should find that it lacks jurisdiction to determine whether the dismissed cases are frivolous or malicious.

**Frivolous or Malicious Actions**

Assuming, *arguendo*, the court could exercise jurisdiction via Rule 60(b) over the cases, none of the cases Medina brought rise to the level of "frivolous or malicious" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). The statute, which governs proceedings *in forma pauperis* ("IFP"), requires a court to "dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i).

There are parties, plaintiffs and attorneys alike, who abuse the ADA's private right of action by teaming up "for personal monetary gain by filing self-serving, fee-driven lawsuits that often do not advance the rights of individuals with disabilities" but serve as a means to extort allegedly noncompliant businesses. *Id.* at 73. The ADA encourages but does not require plaintiffs to seek informal remedies before filing suit, facilitating this strategy. 28 C.F.R. § 36.506.

One such scenario played out in the District of New Mexico. A single disabled plaintiff and her attorney filed in ninety-nine *in forma pauperis* ("IFP") cases almost identical complaints against places of public accommodation. *Carton v. Carroll Ventures, Inc.*, No. 17-0037, 2017 U.S. Dist. LEXIS 107135, at *2 (D.N.M. July 10, 2017). The court, suspicious, consolidated and referred the cases to a magistrate judge for evidentiary hearings and legal analysis to determine whether the complaints were "frivolous and malicious" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *Id.* at *1. The magistrate found that they were but not based on the sheer number or the same plaintiff and attorney. These cases were tainted by substantive errors and clear

misconduct. A litigation funding group backed the lawsuits and paid the plaintiff for her participation. The plaintiff's attorney initially concealed the plaintiff's and her own relationship with the litigation funding group from the court and prepared template complaints prior to the instances of alleged discrimination and often failed to support them with evidence. *Id.* at \*8, \*18. Furthermore, the plaintiff and her attorney filed IFP even though plaintiff had sufficient funds to pay the court fees, and the court expressly warned them that those fees were not waivable. *Id*. at \*7–8, \*21–3. Despite complaints claiming that she had visited every place of public accommodation, the plaintiff visited only some. *Id.* at \*14. Usually her driver had already scouted out noncompliance for her to confirm; these visits were more like set-ups than organic discoveries. *Id.* at \*14. The court also found that the funding group, not the attorney, drafted the complaints and other documents submitted to the court; the plaintiff was only loosely involved. *Id.* at \* 16–20.

There are a number of factual distinctions between the instant cases and *Carton*, but the most significant may be the payment of filing fees. Only twice did Medina file IFP, and he did so contingent on reimbursing the court in the event the contingency-fee arrangement compensated counsel. Case No. 15-3184, Dkt. 1; Case No. 15-3190, Dkt. 1. In the former case, the court denied the IFP motion. Case No. 15-3184, Dkt. 4. In the latter, the court set aside its IFP order after a motion for reconsideration and ordered Medina to pay the filing fees. Case No. 15-3190 at Dkt. 26. In every other case, Velez has paid all costs including filing fees, and he requests attorney's fees and costs as permitted under the ADA. *See* 42 U.S.C. § 12188(a)(1) (citing 42 U.S.C. § 2000a-3(b)). Because Medina has not proceeded IFP in these cases, they fall outside the domain of § 1915. Moreover, neither Medina nor Velez has a relationship with a third party comparable to the litigation funding group in *Carton.* Velez contracts with an expert witness, but this is an entirely distinct third-party relationship. When Medina finds an instance of noncompliance, he tells Velez, and they discuss the lawsuit and the complaint together. Medina does not receive any monetary or other benefit from acting as plaintiff aside from achieving his purpose of forcing improvements to facility accessibility.

Even if Medina's cases were IFP, his conduct would not rise to the level required by § 1915. The statute does not define "frivolous or malicious," but case law fills the gaps. "A claim is 'frivolous' within the meaning of section 1915[e][3] when it is 'based on an indisputably meritless legal theory,' or makes 'clearly baseless' factual contentions." *Watson v. Caton*, 984 F.2d 537, 539 (1st Cir. 1993) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). In determining frivolousness, the Court warned that the court must resolve reasonable inferences in the plaintiff's favor. *Neitzke*, 490 U.S. at 328. In contrast, a finding of maliciousness requires the court to "engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendants." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3rd Cir. 1995). Malicious is defined as "[s]ubstantially certain to cause injury" and "[w]ithout just cause or excuse." *Black's Law Dictionary* (10th ed. 2014). The First Circuit has defined maliciousness as "having spiteful, malignant purpose." *Welch v. Ciampa*, 542 F.3d 927, 944 (1st Cir. 2008) (internal quotations omitted).

The only possible recourse, if Medina brought cases when he technically lacked standing to do so, would be under Rule 60(b). To invoke subsections (3) or (6), however, there must be strong evidence. The First Circuit requires that, when seeking a new trial under Rule 60(b)(3)'s misconduct prong, a movant show by clear and convincing evidence that "misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988). Rule 60(b)(6) relief is reserved for "extraordinary circumstances" justifying "extraordinary" relief. See *Valley Citizens for a Safe Env't v. Aldridge*, 969 F.2d 1315, 1317 (1st Cir. 1992). These are high barriers to overcome in normal circumstances. A review of the hearing transcript shows that such clear and convincing evidence supporting "extraordinary relief" would not be available even if the court could, *sua sponte*, invoke Rule 60(b). Accordingly, even if the court finds jurisdiction over these closed cases, the court should

---

[3] 28 U.S.C. § 1915 has been amended. After the passage of the Prison Litigation Reform Act of 1996, § 1915(d) was redesignated as § 1915(e); decisions issued prior to this amendment have been corrected to refer to the court's mandate to dismiss frivolous or malicious actions subsection (e).

In re: Cases Filed under the Americans with Disabilities Act by Norberto Medina-Rodriguez          9

find that Medina is neither bound by § 1915 nor has he brought frivolous or malicious cases under the ADA.

## CONCLUSION

For the reasons stated above, I recommend that the court finds the cases to be neither frivolous nor malicious under 28 U.S.C. § 1915.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 15th day of October, 2018.

*S/Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge